Spellman JENNINGS, Adm'r v. Elmer SEXTON

5-5107                                    449 S. W. 2d 408

Opinion delivered February 2, 1970

*Billingsley, Stubblefield & Matthews,* for appellant.

*Murphy, Arnold & Blair,* for appellee.

Lyle Brown, Justice. Tena Cheryl Rector, age three years, was fatally injured when she was struck in the driveway by a pickup truck driven by her maternal grandfather, Elmer Sexton. Spellman Jennings, Administrator, brought this suit against Sexton, seeking recovery for the death of the child. At the close of the administrator's proof the trial court granted a motion for an instructed verdict in favor of the defendant Sexton. On appeal the administrator challenges the correctness of the directed verdict.

The Bob Rector family, consisting of the husband, wife, and Tena Cheryl, were spending several days in May 1968 in the home of Mrs. Rector's father (appellee) at Viola in Fulton County. The only persons at home at the time of the mishap were appellee, Mrs. Rector, and Tena Cheryl. Until about ten o'clock a.m. on May 18, appellee had spent most of his time at the Viola school where he did custodial work. Until that time he had not used his truck. It was parked near the front door of the home and some eight feet from the steps leading to the door. The driver's side of the truck was farther away from the steps. He returned to his home about mid-morning. Mrs. Rector was in the living room into which the front door opened. Tena Cheryl was in the bedroom playing with a doll. In the four-room house the child was visible to the mother. The bedroom, bathroom, and kitchen all open off the living room. Mrs. Rector and appellee conversed a few minutes, whereupon appellee left through the front door and entered his truck. He left the house alone. The child was in the house at the time appellee left but Mrs. Rector was not certain as to just what part of the house. Appellee's mission was to proceed just across the road and cut some trees which had blown over. Mrs. Rector was not aware that her father was going to use the truck. From the time appellee left the house to the time he started the truck there was no unusual lapse of time—no longer than it would take for him to walk directly to the truck, enter it, and start the motor. About the time Mrs. Rector heard the motor she missed the child and stepped out the door to see about her. The truck had stopped and the child's body was under the truck with her head resting against the front of the right rear wheel.

The facts recited are taken from the testimony of Mrs. Rector. She further testified about the relationship between appellee and his granddaughter, Tena Cheryl. They were very devoted to each other; she always wanted to go with him and he took her along very often. Bob Rector testified that the child was fond of riding in

the truck and estimated that appellee would take Tena in the truck almost twice daily to such places as the school, the store, and the postoffice. The father also testified that both the mother and appellee related that the child was in the house at the time appellee left to enter the truck.

After the court announced that the motion for an instructed verdict would be granted, appellant sought permission to reopen the case and call appellee as a witness. That motion was denied and appellant was permitted to dictate into the record his version of what appellee's testimony would be if he were called to testify. In his argument for reversal, appellant in no wise advances as a point the allegation that the trial court abused its discretion in refusing to permit the case to be reopened for further testimony. We would have to find that the trial court committed error in that respect before evaluating the proffered testimony. We do not reach that matter because it is not argued. Consequently we give no weight to the proffered evidence in resolving the propriety of the instructed verdict.

If in the exercise of ordinary care under the circumstances the child could or should have been seen by appellee, then it would have been negligence for him not to have observed the child. If the child was in the habit of darting toward the truck when the motor started, or if she ordinarily followed after him when he left the house, then such behavior would be a factor in evaluating appellee's conduct; in other words, in those circumstances he would be required to exercise care commensurate with the behavior reasonably to be anticipated. See *Smith* v. *Wittman*, 227 Ark. 502, 300 S. W. 2d 600 (1957), and AMI 605.

We have examined the evidence and all reasonable inferences deducible therefrom in a light most favorable to appellant and we cannot say there was substantial evidence of negligence to be submitted to the jury. There is no proof that the child was ever in a position to be ob-

served by appellee, or in a position where she would have been observed. There is no evidence that the child ever before darted from the custody of one of the parents or otherwise followed appellee to a position of danger in proximity to the truck; the fact that the grandfather would often take her with him could not, standing alone, justify such a likelihood. When appellee walked alone out the front door, Tena Cheryl was in the house, as was her mother, the latter being in the front room near the door. It is clear to us that the child darted through the door unseen by her mother and at or about the time the motor started. The walk from the door to the driver's side of the truck could not have been more than ten steps. It would be pure speculation to say from the evidence that appellee should have anticipated that the child would escape the eye of her mother and in a matter of not more than a minute make her way to the rear of the truck.

Affirmed.